## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Dawn Vail, individually and as Trustee for North Dakota Workforce Safety & Insurance, | ) ) ) ) | **REQUEST FOR ANSWERS TO CERTIFIED QUESTIONS AND** |
| Plaintiff, | ) ) | **ORDER FOR TRANSMITTAL TO THE NORTH DAKOTA** |
| vs. | ) ) | **SUPREME COURT** |
| S/L Services, Inc., | ) ) | Case No. 4:14-cv-008 |
| Defendant. | ) | |

I.      **CERTIFIED QUESTIONS**

Pursuant to N.D. R. App. P. 47, the United States District Court for the District of North

Dakota respectfully requests that the North Dakota Supreme Court answer the following questions

that have arisen in this action between plaintiff Dawn Vail ("Vail") and defendant S/L Services, Inc.

(S/L Services):

1.      In this case, where Vail was an employee as a matter of law at all times she worked for S/L Services but S/L Services (a) treated Vail on its payroll and otherwise as an independent contractor prior to her workplace injury, (b) thereafter opposed Vail's claim for workers' compensation benefits on the basis that she was not an employee, and (c) omitted Vail's wages from its premium payroll report in August 2013 (even after being told by WSI in July 2013 that it needed to include Vail as an employee) may (a), (b), and/or (c), either independently or in combination with one another, serve as a failure "to secure coverage for employees" for purposes of N.D.C.C. § 65-04-33(2) if done willfully within the meaning of that section, even if S/L Services later paid a premium that included consideration of Vail's wages for the period in which she was injured after WSI demanded it do so?

2.      In this case, where Vail was an employee as a matter of law at all times she worked for S/L Services but S/L Services (a) treated Vail on its payroll and otherwise as an independent contractor prior to her workplace injury, (b) thereafter opposed Vail's claim for workers' compensation benefits on the basis that she was not an employee, and (c) omitted Vail's wages from its premium payroll report in August 2013 (even after being told by WSI in July 2013 that it needed to include Vail as an employee)

may (a), (b), and/or (c), either independently or in combination with one another, serve as a misrepresentation of the "amount of payroll upon which a premium under this title is based" for purposes of N.D.C.C. § 65-04-33(2) if done willfully within the meaning of that section, even if WSI calculated the premium for the period during which Vail was injured using Vail's wages and S/L Services paid that premium?

3. In this case, where S/L Services failed to include in its wage report for the August 2012 - August 2013 premium period the wages of some six or seven welder's helpers who were similarly situated to Vail and whose wages were <u>not</u> included in WSI's calculation and billing for that premium period, but were later included in a subsequent billing by WSI following a 2014 audit and paid by S/L Services at that time, can the failure on the part of S/L Services to include the wages of these other welder's helpers in the August 2012 - August 2013 wage report constitute a violation of § 65-04-33(2), if it was done willfully within the meaning of that section, and can Vail rely upon that alone to support a claim that S/L Services has lost its immunity from a common law suit for damages for her workplace injury?

4. In order to prove a violation of § 65-04-33(2), is Vail required to demonstrate that S/L Services knew at the time it engaged in the conduct that Vail claims amounts to a violation that she or any of the other workers similarly situated were employees as a matter of law and entitled to workers' compensation coverage?

5. In proving a violation of § 65-04-33(2), can Vail satisfy the statute's scienter requirement if she proves that S/L Services acted in reckless disregard of the fact that she and any other workers similarly situated were employees as a matter of law and entitled to worker's compensation coverage at the time it engaged in the prohibited conduct?

6. In proving a violation of § 65-04-33(2), can Vail satisfy its scienter requirement by proving only that S/L Services intentionally, and not inadvertently, committed an act prohibited by the statute and not prove any other state-of-mind, including that S/L Services had knowledge of the relevant obligations imposed on an employer under the worker's compensation laws, that S/L Services knew that Vail was an employee as a matter of law, that S/L Services intended to deceive WSI or otherwise violate the law, or that S/L Services acted in reckless disregard of the law's requirements or that Vail was an employee as a matter of law?

7. Can S/L Services avoid a finding of a violation of § 65-04-33(2) if it can be demonstrated that, at the time it engaged in the conduct that is alleged to have constituted a violation, it believed in good faith that Vail or other similarly situated workers were not employers as a matter of law, even though that belief was mistaken?

## II.   STATEMENT OF FACTS

Except to the extent indicated otherwise, the following facts should be taken as true for the purposes of the certified questions.

S/L Services, a Montana based company, submitted an "Application for Insurance" to WSI on August 23, 2012. (Doc. No. 9-2).   Prior to submitting its application, S/L Services did not have North Dakota workers' compensation coverage for the work it was doing within the state, relying instead upon extra-territorial coverage from the State of Montana.   In the application, S/L Services estimated that in the next 12 months it would have 42 employees and total taxable wages of $976,500.00. (Id.).

On August 28, 2012, WSI issued S/L Services a "Premium Billing Statement" charging an estimated premium for the period from August 23, 2012 to August 31, 2013 that was based upon the number of employees that S/L Services reported and their estimated wages.  (Doc. No. 9-3, p. 2). S/L Services paid the premium by check dated September 4, 2012.  (Id. at p. 3).  On September 10, 2012, WSI issued S/L Services a "Certificate of Premium Payment" with an expiration date of November 14, 2013.  (Doc. No. 9-6).

Within days of S/L services having paid its initial premium, Vail came to work for S/L Services as a welder's helper.  Initially, she worked with welder Steve Basse.  After several months she was paired with welder Tell Cook, although on occasion she did other work as assigned.  (Doc. No. 40-4).

Vail worked for S/L Services for the better part of eight months up to the time that she suffered a workplace injury on May 25, 2013.  During that time, Vail worked every week, except

for the last two weeks of December 2012 and for the month of January 2013. In most weeks, Vail logged over 40 hours per week and in some weeks more than 70 hours. (Doc. No. 37-10).

During the entire time that Vail worked for S/L Services, she was treated as an independent contractor. She was paid a flat amount per hour for the hours she worked with no withholdings for federal income tax and social security. Before she started work, S/L Services required that she complete a form W-9 and, for the 2012 tax year, S/L Services reported to the IRS the compensation paid her using Form 1099, Schedule 2.[1] (Doc. No. 15-9). Finally, Vail was not paid overtime for the many weeks she worked in excess of 40 hours as required by North Dakota's wage and hour laws for employees. (Doc. No. 37-10).[2]

After suffering her on-the-job injury on May 25, 2012, Vail filed a claim with WSI in late May for compensation for her injuries. (Doc . No 52-1, p.2). After Vail filed her claim, WSI required that S/L Services complete a form that asked for certain information about Vail's employment, including her dates of employment, her hourly wage, and whether her work was full time, part time, or seasonal. In addition, the form asked whether S/L Services was contesting the claim, and, if so, what the basis for contesting it was. In response to that question, S/L Services wrote: "Dawn Vail is a subcontractor not an S/L Services Inc. employee." (Doc. No. 15-8).

---

[1] As explained by S/L Services' accountant in a letter seeking administrative review of WSI's decision that Vail was an employee, a W-9 is a "United States Internal Revenue Service tax form that is only for independent contractors not employees." The accountant likewise explained that Form1099's are used to report compensation paid to independent contractors as opposed to W-2's that are used to report wages paid to employees.

[2] Welder Steve Basse, with whom Vail was initially paired as a welder's helper, testified he told S/L Services' project manager, Jamie Whitman, when he and Vail first started work that it was wrong to treat Vail as an independent contractor. Whitman in his deposition acknowledged that Basse had so claimed. (Doc. No. 37-3, p. 33). Vail testified that she had also questioned her treatment as an independent contractor and that Whitman response was "How bad do you want a job." (Doc. No. 37-4, p. 8). Whitman in his deposition denied this conversation. (Doc. No. 37-3, p. 31).

Because of this response, WSI required that S/L Services complete a "Worker Relationship Questionnaire," which WSI stated would be used in helping to determine whether Vail was an employee or an independent contractor. S/L Services completed the form and the answers that it gave were consistent with its position that Vail was not an employee. (Doc. Nos. 37-6).[3]

Notwithstanding S/L Services' objection to Vail's claim, WSI, in a "Notice of Decision Establishing Employee Status and Accepting Claim and Awarding Benefits" dated July 10, 2013, advised that it "ha[d] determined S L Services Inc. is an employer of Dawn Vail and any similarly situated workers and awarded Vail benefits." (Doc. No. 15-4). The notice further ordered pursuant to N.D.C.C. § 65-04-33 that S/L Services was required to "submit all wages for all employees including Dawn Vail, and any similarly situated employees, to WSI for the previous six (6) years." (Id.). Finally, the notice advised that S/L Services had 30 days in which to seek reconsideration of the order and that, if reconsideration was not sought, the decision establishing Vail as an employee and the award of benefits would become final. (Id.).

The thirty days in which S/L Services had to seek review of WSI's determination that Vail was an employee and entitled to benefits ended on or about August 9, 2013. S/L Services has presented no evidence that it sought review of that determination during this 30-day period or obtained an extension to do so.

On August 22, 2013, S/L Services submitted its "Employer Payroll Report" for the period from August 23, 2012 to August 31, 2013. (Docket No. 9-4). To complete the report, S/L Services was required to provide the name, classification, and payroll information of each of its employees.

---

[3] Several of the answers were at best disingenuous given the lack of any factual support for them.

Despite the outstanding order from WSI that S/L Services provide the payroll information for Vail and others similarly situated, S/L Services did not include in the payroll report Vail's wages or the wages of some six or seven other welder's helpers who WSI later determined were similarly situated. (Id.; Doc. Nos. 15-6, 52-1). Further, while some wages were reported for four other welder's helpers, there is evidence which suggests that, for one or more of these persons, this information was provided because S/L Services had paid them wages for a short period of time before reclassifying them as independent contractors and that S/L Services did not include the amounts of compensation that were paid after reclassification.

In an affidavit filed by Steve Belka, Premium Audit Supervisor for WSI, he stated the following with respect to the wage report filed by S/L Services for the August 2012-August 2013 reporting period:

> 16.    WSI did not make a determination of whether or not S/L Services "willfully" misrepresented payroll to WSI. We did determine that Dawn Vail and others were not reported as employees during the August 2012-August 2013 reporting period.

(Doc. No. 52-1, p.2).

On September 6, 2013, WSI issued S/L Services a "Premium Billing Statement" for the period from August 23, 2012 to August 31, 2013, in the amount of $26,737.23. (Doc. No. 9-5). While S/L Services had reported a total of $1,022,324.29 in adjusted wages for premium purposes in its wage report,[4] WSI increased the adjusted total to $1,065,204.29 in its premium billing. (Id.). According to Premium Audit Supervisor Steve Balka, this adjustment included an amount for Vail's wages for the premium period in question because of WSI's earlier determination that Vail was an

---

[4] There was a $27,900 per employee cap on wages used for determination of the premium.

employee. (Doc. No. 45-1, p.2). In other words, WSI caught the fact that at least Vail's wages had not been included in S/L Services' wage report.

S/L Services paid the full amount of the billed premium by check dated September 12, 2013. (Doc. No. 9-5). That is, S/L Service did pay a premium for the billing period of August 23, 2012 to August 31, 2013 that was based in part on the compensation paid Vail for the premium period in which she suffered her injury.

In November 2013, S/L Services, acting through its accountant, sent a letter to WSI dated November 18, 2013, asking it to reconsider its decision to classify Vail as an employee and pay her benefits. (Doc. No. 18-1).[5] S/L Services has offered no evidence that WSI acted upon this request, much less changed its earlier decision. In any event, it is immaterial now with S/L Services having acknowledged for purposes of this action that Vail was an employee, as discussed later.

In the first quarter of 2014, WSI audited S/L Services for the period from August 23, 2012 through August 31, 2013, *i.e.*, the period of Vail's injury as well as for the then current reporting period . (Docket No. 15-6). WSI's "Audit Remarks and Message" discussing the audit states, in part:

> The business issued 24 1099s during the audited period totaling $665,189.38. They were issued for the services of welding. The 1099s were reviewed closely as per the notes on the account, an individual reported a claim under this account and was claiming to be an employee while the employer stated they were a 1099 individual. After much review with these 1099s, it was determined we will be picking up the individuals that do not have a contract on file with the employer, are not currently listed as employees of the company, and do not have a business name. Many detailed questions were asked to the employer to get a better understanding of these individuals and the burden of proof was not met to treat them

_____

[5] The letter included what can best be characterized as a scathing attack upon Vail's credibility in terms of past statements and representations, for which it appears S/L Services had little basis, along with a detailed argument for why S/L Services was claiming that Vail was not an employee. Also, in response to a purported statement made by Vail that all of the other welder's helpers were now being treated as employees because of the position she took, the letter stated "according to management that is not the case [.]" (Id.). The latter suggests that the exclusion of the compensation paid to other welder's helpers in the August 2012 - August 2013 report was deliberate and not inadvertent.

as independent. For this reason, these individuals were picked up as employees. See Payroll Cap Worksheet None to 6301.

(Docket No. 15-6, p. 5). On June 20, 2014, WSI sent S/L Services a "Notice of Decision" advising that, as a result of the audit, S/L Services would be charged an additional premium for the audit period and for the period from September 1, 2013 to August 31, 2014. (Docket No. 18-2). This was subsequently paid by S/L Services.

With respect to the 2014 audit, Premium Audit Supervisor for WSI, Steve Balka, stated the following in another affidavit that he has executed in connection with this case:

> 13.     Because we suspected that S/L Services had improperly classified other workers as independent contractors (and therefore omitted their wages from payroll reporting), we conducted an audit of their account in April 2014. The audit covered the August 2012-August 2013 reporting period. As a result of that audit, we identified seven individuals whom S/L did not report as employees in August 2013 whose wages should have been disclosed for premium calculations. We calculated additional premium owed on these employees. These individuals were Charles Vap, Jesse LaBoy, Joseph Long, John Young, Juan Ramon Rodriguez, Enrique Parra, and Joshua Schneider.

> 14.     S/L was then asked to pay additional premium based on the wages paid to the above individuals, which S/L did. WSI relies on employers to accurately report the wages paid to individuals on their annual payroll report.

> 15.     WSI has the authority under NDCC 65-04-33 to assess a penalty against employers who willfully misrepresent payroll.

> 16.     WSI did not make a determination of whether or not S/L Services "willfully" misrepresented payroll to WSI. We did determine that Dawn Vail and others were not reported as employees during the August 2012-August 2013 reporting period.

(Doc. No. 52-1). While it appears that Balka's affidavit testimony is uncontradicted, it should be assumed as being true for purposes of the certified questions.

In addition to seeking workers' compensation benefits from WSI, Vail also filed a claim with the North Dakota Department of Labor on November 2, 2013, seeking a recovery of overtime pay she claimed she was entitled to based on her status as an employee. S/L Services contested the claim,

contending she was an independent contractor and not an employee.  It also attempted to assert a "counterclaim" for per diem amounts it had advanced to Vail but that Vail purportedly had not properly documented she was entitled to retain.  (Doc. No 37-10).  In a written determination dated June 6, 2014, the Department of Labor determined that Vail was an employee and that she was entitled to the overtime pay she claimed.  (Id.).

S/L Services has now acknowledged in deposition testimony that Vail was an employee for the entire period that she performed work for S/L Services - a point that it had initially continued to contest in this action.[6]


## III.    THE FEDERAL ACTION

Vail initiated this action on January 23, 2014, suing in her own capacity and as trustee for WSI.  S/L Services moved to dismiss prior to answering.  The court denied  the motion, concluding that Vail had stated a claim based on the facts pled in the complaint as well as in selected documents presented by the parties from the underlying WSI administrative process over which there was no dispute.  In particular, the court rejected S/L Services' argument that the mere opening of an account and paying some premium insulated it from any claim pursuant to § 65-04-33(2).  Vail v. S/L Services, Inc., No. 4:14-cv-008, 2015 WL 1393161, at **8-10 (D.N.D. Mar. 25, 2015).  And, while the court noted the difficulty of applying the relevant statutes given the manner in which WSI collects its premiums, it concluded that one possible pathway open to Vail was if she could prove that S/L willfully misrepresented its payroll as to the compensation paid Vail during the period in

---

[6] Despite the fact that S/L Services never sought state court review of the administrative determinations by WSI and the Department of Labor that Vail was an employee, it continued to deny the point and contend she was an independent contractor in its briefing on the initial motion to dismiss and later in its answer following the court's denial of that motion.

which she was injured.  Id.  The court also noted the possibility of making an argument for failure to secure coverage.  Id. at *10 n.6.

Following the completion of discovery, this matter is back before the court upon a motion for summary judgment filed by S/L Services.  S/L Services contends in its motion that Vail does not have a claim of violation of § 65-04-33(2) as a matter of law because S/L Services not only secured workers' compensation coverage for its employees but also because it did pay a premium for coverage for the period in which Vail was injured that was based in part on the amount of compensation it paid Vail, even though the payment came after Vail was injured and after the acts that Vail claims violated § 65-04-33(2).  In the alternative, S/L Services contends that at no time did it "willfully" fail to secure coverage or misrepresent its payroll within the meaning of § 65-04-33(2).

## IV.  DISCUSSION OF THE CERTIFIED QUESTIONS

### A.  Introduction

This case has changed in two significant respects since the court ruled on the initial motion to dismiss - putting aside that the court had to accept as true Vail's allegations that S/L Services had acted willfully within the meaning of the N.D.C.C.  § 65-04-33(2) for purposes of that motion.  The first has to with the evidence that WSI did calculate the premium amount it billed  S/L Services for the August 2012 - August 2013 billing period using Vail's wages, notwithstanding the failure of S/L Services to include Vail's wages in its wage report for that period, and that S/L Services paid the billed amount. This had not been established when the court denied the motion to dismiss.

The second change has to do with the recent decision of the North Dakota Supreme Court in Carlson v. GMR Transp., Inc., 2015 ND 121, 863 N.W.2d 514 ("Carlson III"), which was the was the last in a series of three appeals in the case and which came down after this court's denial of the motion to dismiss. The significance of what was decided or not decided in Carlson III will be addressed below.

The first three certified questions address whether Vail has any claim for violation of § 65-04-33(2) such that, if she is able to prove a violation, she can pursue her common law claim of negligence against S/L Services for her workplace injury. Question One goes to whether Vail has a claim under § 65-04-33(2) for S/L Services purportedly having failed to secure workers' compensation coverage for her. Question Two goes to whether Vail has a claim under the statute for the failure of S/L Services to have included her wages in its wage report for the premium period in which she was injured. Question Three goes to whether Vail can make out either a failure-to-secure coverage or a misrepresentation-of-payroll claim based only upon S/L Services' treatment of other welder's helpers during the same time frame.

The final four questions address § 65-04-33(2)'s scienter requirement in terms of what must be proved by Vail to make out a claim of violation of the statute, particularly in the context of when an employer had purposefully treated a person who lawfully was an employee as an independent contractor. If the North Dakota Supreme Court answers all of the first three questions in the negative, a response to the remaining questions is not required since S/L Services will be entitled to a summary judgment of dismissal as a matter of law.

One of the primary arguments that S/L Services makes with respect to all of the certified questions is one of unfairness. With respect to the first three certified questions, S/L Services argues

that the legislature could not have intended the broad constructions of § 65-04-33(2) that Vail advocates because of the harsh consequences that can follow from an employer mistakenly concluding that a worker is an independent contractor and not an employee (particularly when the employer was proceeding in good faith) in terms of not only losing the immunity from common law liability that the workers' compensation law provides but also the consequence of being stripped of several common law defenses under N.D.C.C. § 65-09-02.

S/L Services makes the same arguments when it comes to the question of what is required to satisfy § 65-04-33(2)'s scienter requirement. It argues that, given the severity of the consequences of a wrongful determination, the legislature intended either proof that the employer knew the worker was an employee as a matter of law, or, at the very least, that the employer could avoid liability under § 65-04-33(2) by demonstrating that it had proceeded in a good faith belief that the worker was not an employee.

Vail's response in advocating for her constructions of § 65-04-33(2), including a narrow construction of its scienter requirement, is that there is no unfairness in subjecting an employer who has deliberately treated a worker as an independent contractor to a common law suit for damages because:

- There is no established right of an employer to be immune from suit by an employee save when it has secured workers' compensation coverage and is otherwise in compliance with the workers' compensation law that provides immunity.

- Any employer who treats a worker as an independent contractor either knows or should know that it is subject to suit if it causes an injury to the worker since there is no immunity from suit by an independent contractor. So, where is the unfairness

in subjecting an employer to a common law suit for having treated a worker as an independent contractor if that is the expectation in the first instance?

• The legislature has created a mechanism for avoidance of the severe consequences of a wrongful determination that a worker is not an employee with its enactment of a provision that (1) allows an employer to obtain an advance determination of whether the person is an employee or an independent contractor, and (2) provides "safe harbor" from any adverse consequences if the decision is later determined to be erroneous.  N.D.C.C. § 65-09-01(2); N.D. Admin. Code § 92-01-02-49.1.  Also, an employer can mitigate its risk as a practical matter by requiring an independent contractor it contracts with to secure its own worker's compensation coverage and provide evidence of that fact before any work is performed - a practice that S/L Services has acknowledged that it now engages in because of its experience with this case.  Finally, if the consequences of an erroneous determination by an employer of whether or not a particular person is an independent contractor or any employee are perceived to be too severe, this is something for the legislature to correct and not the courts.

**B.     The certified questions directed to whether Vail has a claim for violation of  § 65-04-33(2) as a matter of law assuming she can prove that S/L Services acted willfully**

       **1.     First Certified Question: *In this case, where Vail was an employee as a matter of law at all times she worked for S/L Services but S/L Services (a) treated Vail on its payroll and otherwise as an independent contractor prior to her workplace injury, (b) thereafter opposed Vail's claim for workers' compensation benefits on the basis that she was not an employee, and (c) omitted Vail's wages from its premium payroll report in August 2013 (even after being told by WSI in July 2013 that it needed to include Vail as an employee) may (a), (b), and/or (c), either independently or in combination***

*with one another, serve as a failure "to secure coverage for employees" for purposes of N.D.C.C. § 65-04-33(2) if done willfully within the meaning of that section, even if S/L Services later paid a premium that included consideration of Vail's wages for the period in which she was injured after WSI demanded it do so?*

As noted by the North Dakota Supreme Court in <u>Carlson III</u>, N.D.C.C. § 65-09-02 provides an injured employee the dual remedies of being able to seek workers' compensation benefits as well sue the employer when the employer is in violation of § 65-04-33. 2015 ND 121, at ¶ 14. However, if the employee recovers damages in the suit against the employer, WSI can recoup the benefits it has paid pursuant to a subrogation interest that is granted by § 65-09-02.[7]

Relevant to this case is that an employer can violate subsection 2 of § 65-04-33 in two ways. The first is when an employer "willfully misrepresents to the organization [WSI] or its representative the amount of payroll upon which a premium under this title is based," which is herein referred to as a "misrepresentation-of-payroll" claim. The second is when an employer "willfully fails to secure coverage for employees," which is herein referred to as a "failure-to-secure-coverage" claim. The first certified question goes to whether Vail has a failure-to-secure-coverage claim.

One possible construction of § 65-03-33(2) is that a failure "to secure coverage for employees" means simply the failure to open an account for "insurance coverage for the protection of employees" as required by subsection (1) of that section. And, if this is all that is meant, then Vail has no failure-to-secure-coverage claim given that S/L Services did open an account and paid some premium prior to Vail getting hurt.

---

[7] Hence, contrary to what S/L Services at one point contended, there would be no double recovery.

Another possible interpretation of the statutory language, however, is that the phrase "secure coverage for employees" means doing what is necessary so that persons for whom coverage is intended by law are eligible, including treating persons who legally are employees as employees and submitting their names to WSI along with the amount of their compensation when required to do so. This is not an implausible interpretation given that there never is a situation where a person who actually is an employee would be denied coverage under Title 65 because of some act of the employer, including the failure to open an account. And, if "failure to secure coverage" under § 65-04-33(2) means more than failing to open an account, then Vail's argument for there having been a violation appears to be the following (assuming she can prove the failure to secure coverage was willful):

- The first opportunity that S/L Services had to secure coverage for Vail was to have treated her as an employee when she was first employed. This likely would have guaranteed Vail coverage without contest when she was injured, even though S/L Services had yet to pay a premium based on Vail's wages, given the manner in which WSI assesses premiums.

- The second opportunity that S/L Services had to secure coverage for Vail was when she made her claim for benefits. At that point, S/L Services could have agreed Vail was eligible instead of contesting her claim on the grounds she was not an employee and putting her in the position of having to prove the contrary and, essentially, securing her own coverage. If S/L Services had agreed that Vail was an employee

and entitled to coverage when she made her claim, that most likely would have ended the matter.[8]

- There is nothing that S/L Services did that at any point secured coverage for Vail. As already noted, Vail could obtain coverage if she proved she was an employee even if S/L Services had failed to open an account. And later, when Vail did obtain an award of benefits, it was the result of her own effort and WSI agreeing she was an employee notwithstanding the opposition of S/L Services and its prior treatment of her as an independent contractor. Finally, the subsequent payment by S/L Services of a premium that included Vail's wages arguably did not amount to securing coverage for Vail since (1) the determination of coverage had already been made and her benefits would continue to be paid regardless of whether WSI collected a premium from S/L Services, and (2) WSI later billing and collecting a premium from S/L Services can be viewed as nothing more than WSI enforcing its right to recover a premium for the amounts it was paying in benefits to Vail after she had secured coverage for herself.

---

[8] In the unlikely event that WSI for some reason concluded that Vail was not an employee notwithstanding both parties agreeing she was, then there would have been no failure to secure coverage.

2. **Second Certified Question:** *In this case, where Vail was an employee as a matter of law at all times she worked for S/L Services but S/L Services (a) treated Vail on its payroll and otherwise as an independent contractor prior to her workplace injury, (b) thereafter opposed Vail's claim for workers' compensation benefits on the basis that she was not an employee, and (c) omitted Vail's wages from its premium payroll report in August 2013 (even after being told by WSI in July 2013 that it needed to include Vail as an employee) may (a), (b), and/or (c), either independently or in combination with one another, serve as a misrepresentation of the "amount of payroll upon which a premium under this title is based" for purposes of N.D.C.C. § 65-04-33(2) if done willfully within the meaning of that section, even if WSI calculated the premium for the period during which Vail was injured using Vail's wages and S/L Services paid that premium?*

a.      **Introduction**

In addition to claiming an entitlement to sue at common law based on an alleged willful failure of S/L Services to secure coverage, Vail claims she is entitled to sue because S/L Services falsely misrepresented its payroll in the payroll report for the August 2012 - August 2013 premium period by (1) not including her wages, and (2) not including wages of a handful of other welder's helpers who were similarly situated.

The second certified question goes to whether Vail has a misrepresentation-of-payroll claim based on the failure to have included her wages in the wage report in question given the particular circumstances of this case, including, but not limited to, the fact that WSI did not rely upon the omission of her wages in setting its premium for the premium period in question.[9]   The third certified question asks whether Vail has a misrepresentation-of-payroll claim for the failure of S/L Services to have included other welder's helpers in the wage report, even if she does not have a claim for the failure to include her wages.

_____

[9]   The fact that S/L Services did not include the wages of other welder's helpers would in this instance be evidence of whether S/L Services acted "willfully."

### b. S/L Services' argument that Vail has no claim because it opened an account

S/L Services makes several arguments for why it is entitled to summary dismissal as a matter of law of Vail's misrepresentation-of-payroll claim with respect to the omission of her wages. The first is that Vail's claim is foreclosed by the fact that it had opened an account and paid an estimated premium prior to Vail's injury. In denying Vail's earlier motion to dismiss, the court rejected this argument, as noted earlier. However, since final judgment has not been entered, the court's earlier ruling is not binding.

The court is not aware of any decision of the North Dakota Supreme Court that has explicitly ruled on this issue. However, in <u>Carlson III</u>, the North Dakota Supreme Court did not rely upon the fact the employer in that case had opened an account in concluding that the worker did not have a misrepresentation-of-payroll claim and the tenor of the court's discussion appears to support the conclusion that simply opening an account and paying some premium is not enough to insulate an employer from a claim of violation of § 65-04-33(2).

### c. S/L Services' argument that Vail has no claim because WSI calculated a premium for the payroll period in which Vail was injured that was based on her wages and S/L Services paid that premium

Another argument that S/L Services makes for why Vail has no misrepresentation-of-payroll claim, even though it did not include Vail's wages in its wage report for the August 2012 - August 2012 premium period, is that its subsequent payment of a premium for that period that included Vail's wages, as well as WSI's acceptance of it, forecloses any claim of violation. The court is not aware of any North Dakota Supreme Court decision that has addressed this specific argument.

When this court ruled on S/L Services' motion to dismiss, S/L Services was contending that it had paid a premium based on Vail's wages for the premium period in which she was injured following WSI's 2014 audit, although that appeared to be question of disputed fact.  It was not until late in the briefing process on the present motion for summary judgment that it was determined otherwise.  According to WSI, and what should be assumed as being true now, the billing it sent S/L Services for the August 2012 - August 2013 premium period was calculated using Vail's wages for that period, notwithstanding S/L Services having failed to include Vail's wages in its wage report. The additional premium that S/L Services paid following the 2014 audit was for other workers who had improperly been treated as independent contractors (including a handful of other welder's helpers)  and not Vail because a premium amount based on her wages had been paid earlier.

These facts gives rise to an additional question that the court did not consider in ruling on the earlier motion to dismiss, *i.e.*, the meaning of the following language of § 65-04-33(2) set forth in italics:

> An employer who willfully misrepresents to [WSI] . . . the amount of payroll *upon which a premium under this title is based* . . . .

Does the italicized language mean that the wage report need be only one that WSI relies upon to calculate premiums and that there can be a violation in this instance for the failure to include Vail's wages (assuming proof of willfulness) even though WSI did not rely upon the omission of Vail's wages in calculating and billing the premium?  Or does the language impose a requirement that the wage report must have actually been relied upon by WSI in calculating a premium in order for there to be a violation?  If it is the latter, then there would be no violation for S/L Services failure to include Vail's wages in the wage report.

The court is not aware of any North Dakota Supreme Court case that has directly addressed the meaning of the italicized language in this context.[10]

        **d.**      **Other possible reasons for concluding Vail has no misrepresentation-of-payroll claim**

Apart from what may be the literal requirements for a misrepresentation-of-payroll claim under § 65-04-33(2), the North Dakota Supreme Court might conclude that reliance by WSI is a necessary requirement and that Vail has no claim because WSI did not rely upon the omission of Vail's wages from its wage report.[11] Also, more broadly, the North Dakota Supreme Court could conclude that what the legislature intended in terms of creating a violation for falsely misrepresenting payroll is where an employer underreports its payroll for those workers it treats as employees and that this statutory language was not intended to address when an employer has consistently treated a worker as an independent contractor, whether rightfully or wrongly.

        **3.**      **Third Certified Question:** *In this case, where S/L Services failed to include in its wage report for the August 2012 - August 2013 premium period the wages of some six or seven welder's helpers who were similarly situated to Vail and whose wages were not included in WSI's calculation and billing for that premium period, but were later included in a subsequent billing by WSI following a 2014 audit and paid by S/L Services at that time, can the failure on the part of S/L Services to include the wages of these other welder's helpers in the August 2012 - August 2013 wage report constitute a violation of § 65-04-33(2), if it was done willfully within the meaning of that section, and can Vail rely upon that alone to support*

---

[10]  As to the somewhat different question of materiality, the North Dakota Supreme Court has held that, when WSI seeks a forfeiture of future benefits under N.D.C.C. § 65-05-33 for a false misrepresentation by a claimant, it is sufficient that the "statement could have misled WSI or medical experts in deciding the claim." <u>E.g.</u>, <u>Forbes v. Workforce Safety and Ins. Fund</u>, 2006 ND 208, ¶ 14, 722 N.W.2d 536.

[11]  S/L Services also contends in its motion for summary judgment that there is insufficient record evidence of a willful misrepresentation. The court disagrees. Even under one of the more stringent definitions of willful misrepresentation discussed later, there is sufficient evidence (including evidence not detailed above) that, at the very least, creates a fact issue as to whether the failure to include Vail's wages amounted to a willful misrepresentation. Hence, the court is not asking the North Dakota Supreme Court to address the argument as to the sufficiency of the proffered evidence.

*a claim that S/L Services has lost its immunity from a common law suit for damages for her workplace injury?*

While WSI calculated and billed its premium for the August 2012 - August 2013 premium period using Vail's wages, the same is not true for several other welder's helpers whose compensation was not included in S/L Services' August 2012 - August 2013 wage report, notwithstanding the order from WSI that S/L Services submit the wage information not only for Vail, but also for those workers who were similarly situated. As noted by the WSI Audit Supervisor, WSI suspected in 2014 that S/L Services had improperly classified other persons for whom no wages had been reported and no premium had been paid and it conducted an audit in early 2014 that resulted in S/L Services paying additional back premium.

This question becomes material if the North Dakota Supreme Court concludes that Vail has no claim for violation of § 65-04-33(2) for either (1) S/L Services having failed to secure coverage for her or (2) S/L Services' failure to include her wages in the August 2012 - August 2013 wage report and the reason for the latter being that WSI did not base its premium for that period on the omission of Vail's wages.

One of the issues raised by this question is whether any claimed violation of § 65-04-33(2) by Vail must involve her personally or whether she can seek to set aside S/L Services' statutory immunity based on evidence that S/L Services was not in compliance with its statutory obligations with respect to others. The relevant statutes do not appear to provide a direct answer and the court is not aware of any North Dakota Supreme Court decision that has addressed the issue.

**C. The certified questions directed to what must be proved to satisfy the scienter requirement of § 65-04-33(2)**

**1. Introduction**

In creating the violations set forth in § 65-04-33(2), the North Dakota Legislature imposed the requirement that the employer must have "willfully" engaged in the prohibited conduct for there to be a violation. "Willful 'is a word of many meanings, however, with its construction often influenced by its context.'" Sweeney v. Sweeney, 2005 ND 47, ¶ 30, 693 N.W.2d 29 (Maring, J., concurring) (quoting Black's Law Dictionary 1599 (6th ed. 1990); see also Ratzlaf v. United States, 510 U.S. 135, 141 (1994); Spies v. United States, 317 U.S. 492, 497 (1943). And, the context may include, for example, the nature of the law that prohibits the conduct or any words that "willful" may paired with, *e.g.,* "willful and wanton." See id..

For purposes of illustration, the United States Supreme Court has construed "willful" as used in some federal criminal statutes to mean simply that a person committed the prohibited conduct intentionally, *i.e.*, not inadvertently, but with no requirement of knowledge of the statute or what it prohibits. That is, it simply refers to "consciousness of the act, but not to consciousness that the act is unlawful." Cheek v. United States, 498 U.S. 192, 209 (1990) (Scalia, J., concurring). For other federal criminal statutes, however, the Supreme Court has concluded that "willful" requires proof the defendant intended to violate the law. E.g., Ratzlaf, 510 U.S. at 146- 49 (violation of currency reporting requirements requires proof that the defendant knew what he was engaged in was unlawful); Cheek, 498 U.S. at 201-04 ("willfully" in a tax evasion case means both that the defendant knew of his duty to pay the tax and that he voluntarily and intentionally violated that duty).

In the civil arena, the United States Supreme Court has on occasion construed the use of "willful" in statutes that impose civil penalties as requiring more than simply that the person intended to do the act that is the subject of the penalty. One example is the ADEA's use of "willful" in 29 U.S.C. § 629(b) to describe those violations of the ADEA for which liquidated damages may be imposed. The Supreme Court has concluded that the ADEA's use of "willful" in that context requires proof that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute [.]" Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993). According to the Supreme Court, this state-of-mind requirement makes room for a conclusion that liquidated damages are not justified if an employer "incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision." Id. at 616.

Similarly, in Sweeney, Justice Maring suggested that the context in which "willful" is used in N.D.C.C. § 14-09-02 (which imposes attorney fees and costs on parents who willfully and persistently interfere with visitation rights) requires proof of a state of mind that equates with acting purposefully with a bad motive, such that evidence of good faith would be relevant in determining whether the person acted with the requisite intent. Sweeney, 2005 ND 47, at ¶¶ 30-38. On the other hand, the North Dakota Supreme Court has also held in the context of a censure of a judicial officer that the term "willfully" means simply that the "the acts were the performer's free will and not done under coercion." Matter of Cieminiski, 270 N.W.2d 321, 327 (N.D. 1978).

If this court was writing on a clean slate and also did not need to be concerned with the fact that the term "willful" is used in N.D.C.C. § 65-05-33 (which creates violations for certain acts of employees), it would be tempted to conclude that what § 65-04-33(2) requires is proof that S/L Services either knew that Vail was an employee and not an independent contractor as a matter of

law or that it acted in reckless disregard that she was a employee, *i.e.*, a scienter requirement comparable to what the United States Supreme Court concluded is required to impose liquidated damages under the ADEA. On the one hand, this would take into account (1) the fact that willfully is paired with "misrepresents" and "fails to secure coverage," which may suggest a need to prove some level of knowledge with respect to the law's requirements, and (2) the complexity of the governing law, including the twenty factor test[12] for determining whether a worker is an employee and not an independent contractor, in terms of allowing consideration of an employer's good faith. On the other hand, allowing for a violation based on recklessness (something less than actual knowledge of unlawfulness) would be consistent with what appears to be the purposes for § 65-04-33(2)'s prohibitions, *i.e.*, to insure that workers who are employees are afforded coverage and to help guarantee the solvency of the workers' compensation system.

### 2. What the North Dakota Supreme Court has stated with respect to § 65-04-33(2)'s scienter requirement and why there is some doubt

If this court proceeded to rule on § 65-04-33(2)'s scienter requirement, however, it would not be writing on a blank slate. This is because the North Dakota Supreme Court has already addressed the statute's scienter requirement, most recently in <u>Carlson III</u> where it stated:

> [¶ 18] The Carlsons argue the district court erred in ruling as a matter of law that GMR did not "willfully misrepresent[ ]" to WSI the amount of its payroll under N.D.C.C. § 65–04–33(2). "Willful conduct" for purposes of N.D.C.C. § 65–04–33(2) means "'conduct engaged in intentionally and not inadvertently.'" <u>Muldoon v. Workforce Safety and Ins. Fund</u>, 2012 ND 244, ¶ 13, 823 N.W.2d 761 (quoting <u>Forbes v. Workforce Safety and Ins. Fund</u>, 2006 ND 208, ¶ 13, 722 N.W.2d 536).

2015 ND 121, at ¶ 18.

---

[12] <u>See</u> <u>Berger v. N.D. Workers Comp. Bureau</u>, 2000 ND 224, ¶¶ 13–14, 620 N.W.2d 576; N.D. Admin. Code § 92–01–02–49.

As indicated by the foregoing passage, Carlson III relied upon Muldoon, an earlier case involving a claim of violation of § 65-04-33(2), in stating that "willful conduct" means conduct engaged in "intentionally and not inadvertently." Muldoon, in turn, looked to Forbes for the definition of "willful conduct" with Forbes being a case involving a claim of a violation of § 65-05-33 by an employee and not a claim pursuant to § 65–04–33(2).

In Forbes, the North Dakota Supreme Court relied, in part, upon Hausauer v. North Dakota Workers Comp. Bureau, 1997 ND 243, ¶ 12, 572 N.W.2d 426 for what is "willful conduct" for purposes of § 65-05-33. And, in Hausauer, the North Dakota Supreme Court had more to say about that subject, stating:

> [¶ 14] Hausauer argues he did not intend to deceive the Bureau, and the Bureau has the burden of proving fraud. Some states have workers' compensation fraud statutes and require proof of intent to defraud by knowingly misrepresenting, misstating, or failing to disclose any material fact in obtaining benefits. See, e.g., Minn.Stat. Ann. § 176.178 (West 1993 & Supp.1997). Our statute, N.D.C.C. § 65-05-33, merely requires the Bureau to prove the false statement was "willfully" made "in connection with any claim or application." Thus, once it is proved a false statement has been made, the Bureau must then prove the act of making the false statement was done intentionally. See Dean, 1997 ND 165, ¶ 15, 567 N.W.2d 626; F.O.E. Aerie 2337, 464 N.W.2d at 201. The Bureau must prove the claimant's state of mind was purposeful in making the false statement. Because a state of mind can rarely be proven directly, it must be inferred from conduct and circumstantial evidence. Dean, 1997 ND 165, ¶ 20, 567 N.W.2d 626 (citing State v. Miller, 466 N.W.2d 128, 134 (N.D.1991)).

Id. at ¶ 14.

In this case, Vail contends that she only needs to prove that S/L Services engaged in the prohibited conduct intentionally, i.e., not inadvertently, and that any lack of knowledge on the part of S/L Services that Vail was an employee as a matter of law and any contention that it was acting in good faith are simply irrelevant. In other words, "willful" in this instance requires only proof of "consciousness of the act" and not "consciousness that the act is unlawful," using the language of Justice Scalia in Cheek, supra. In view of the "intentionally and not inadvertently" language used

by the North Dakota Supreme Court to describe § 65-04-33(2)'s scienter requirement, including its reliance upon cases defining what "willful conduct" means under § 65-05-33, there is substantial force to Vail's argument.

S/L Services contends, however, that the North Dakota Supreme Court has required more in terms of state of mind when it has applied its "intentional and not inadvertent" meaning of "willful" and that, as a minimum, this would allow for consideration in this instance of whether it held a good faith belief that Vail was an employee. S/L Services may have a point.

Starting first with the § 65–04–33(2) cases, the North Dakota Supreme Court in Muldoon stated the following with respect to why the evidence in that case supported a finding that the employer's failure to secure coverage was willful:

> [¶ 11] The second issue is whether Muldoon wilfully violated N.D.C.C. § 65–04–33 by failing to secure workers' compensation coverage in 2008 for the employees of Lauth Contracting, LLC. Muldoon argues he had no knowledge of the statutory requirements of chapter 65–04, N.D.C.C., and he had no knowledge of the terms and conditions of the employment relationship between Lauth and the individual employees.
>
> [¶ 12] "An employer ... who willfully fails to secure coverage for employees, is liable to the state in the amount of two thousand dollars plus three times the difference between the premium paid and the amount of premium the employer should have paid." N.D.C.C. § 65–04–33(2). The ALJ found Muldoon intentionally and willfully engaged in conduct to avoid paying workers' compensation coverage for the employees of Lauth Contracting, LLC.
>
> [¶ 13] Wilful conduct is "conduct engaged in intentionally and not inadvertently." Forbes v. Workforce Safety and Ins. Fund, 2006 ND 208, ¶ 13, 722 N.W.2d 536. "A state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence." Id. (quotation omitted). The ALJ found Muldoon was aware workers' compensation coverage was required for all employees and Muldoon intentionally tried to avoid the responsibility to provide coverage by inducing Lauth to sign a document sent to WSI representing that Lauth was the sole owner of Lauth Contracting, LLC.
>
> [¶ 14] The record supports this finding. Muldoon testified he discussed workers' compensation coverage with Lauth. Muldoon knew his secretary, as his employee, required workers' compensation coverage. Lauth testified that when Morin filed his claim with WSI, Muldoon drafted a form for Morin to sign representing Morin was a subcontractor. Muldoon testified he filled out paperwork designating Lauth as the sole owner of Lauth Contracting,

> LLC and asked Lauth to sign the document before Muldoon faxed the document to WSI. The record supports the ALJ's finding Muldoon willfully failed to provide workers' compensation coverage.

2012 ND 244, at ¶¶ 11-14. Notably, with respect to Muldoon's argument that he had no knowledge of the workers' compensation law's requirements in terms of whether Lauth was an employee, the North Dakota Supreme Court did say that was beside the point and that WSI needed only prove that he intentionally committed the acts that gave rise to the violations as opposed to proving that he did so knowing it was in violation of the law. Instead, in support of the conclusion that WSI had correctly concluded that Muldoon had acted willfully, the court pointed to the evidence that tended to show that Muldoon had knowledge of the law's requirements.

In Carlson III, an employer had objected to an award of benefits to an injured worker claiming that the worker was an independent contractor and not an employee. WSI initially concluded the worker was an employee and eligible for benefits but later both the employer and WSI attempted to get the initial determination reversed. However, the North Dakota Supreme Court in Carlson I and Carlson II concluded that the employer and WSI were stuck with WSI's initial determination, so there never was any ruling on appeal as to whether the worker was an employee or an independent contractor. Then, in Carlson III, the worker attempted to sue the employer claiming it had lost its immunity because it had not included the compensation paid to the worker (and possibly others similarly situated) in the relevant wage report and that this amounted to a willful misrepresentation of payroll within the meaning of § 65–04–33(2). In concluding that the district court had not erred in deciding the employer had not lost its immunity, the North Dakota Supreme Court stated in relevant part:

> The Carlsons appear to rely on the end result of both Carlson I and Carlson II, which left intact WSI's initial determination that Merwin Carlson was an employee entitled to benefits. But Carlson I holds that a request for reconsideration filed by a nonresident attorney on a

company's behalf is void, which resulted in WSI's initial decision becoming final and nonappealable. 2009 ND 87, ¶¶ 34–35, 765 N.W.2d 691. <u>Carlson II</u> holds that an administrative agency must follow this Court's instructions on remand. 2012 ND 203, ¶ 19, 821 N.W.2d 760. This Court has never ruled on the underlying issue of Merwin Carlson's employee status. Indeed, after initially awarding Carlson benefits as an employee, WSI agreed with GMR that Carlson was an independent contractor and spent nearly six years trying to correct what it perceived to be an error. Even if this Court had reached the merits of the underlying dispute and overruled WSI's ultimate conclusion that Carlson was an independent contractor, there would have been different conclusions on Carlson's employee status within WSI itself, two ALJs, two district courts, and this Court. WSI's chief of employer services continues to maintain GMR was in compliance with the workers' compensation laws, a position which is painfully obvious from a mere recitation of the facts in this case.

[¶ 20] Whether conduct is "willful" is generally a question of fact. <u>See</u>, <u>e.g.</u>, <u>Klindtworth v. Burkett</u>, 477 N.W.2d 176, 183 (N.D.1991). But "[i]ssues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts." <u>Groleau v. Bjornson Oil Co., Inc.</u>, 2004 ND 55, ¶ 6, 676 N.W.2d 763. In this case, reasonable persons could only conclude that GMR did not willfully misrepresent the amount of its payroll for purposes of N.D.C.C. § 65–04–33(2).

<u>Carlson III</u>, 2015 ND 121, at ¶¶ 19-20. What is difficult to discern from the foregoing discussion is whether the court concluded that there was no willful misrepresentation because the worker was in fact an independent contractor or whether it was because no reasonable factfinder could conclude anything other than that the employer had a good faith belief that the worker was an independent contractor. If it was the latter, this would support a conclusion that something more than simply proving that the employer intended to commit the acts that constitute the violation is required to satisfy § 65–04–33(2)'s scienter requirement.

Since this court has decided to certify questions to the North Dakota Supreme Court, it has not reviewed in detail the cases addressing the scienter requirement in § 65-05-33. However, from what the court has briefly considered, the same uncertainty as to what exactly is required may exist. For example, in <u>Forbes</u>, WSI concluded that the employee in that case had made false statements about having not engaged in any work since being awarded benefits and about her physical condition. In reaching the conclusion that the false statements had been made "willfully," WSI

explained why the explanations offered by the employee for her statements were not credible. In upholding WSI's determination on appeal, the North Dakota Supreme Court reviewed the evidence that supported WSI's conclusion that the employee's explanations were not credible, even though it appeared from the facts that there was no question the statements were intentionally made and were not inadvertent, regardless of the credibility of the explanations. See Forbes, 2006 ND 208, at ¶¶ 10-17. In other words, an argument can be made that the North Dakota Supreme Court considered, but rejected based on the facts, an argument for no liability based on a good faith belief that the activity engaged in was not what WSI would consider work and that the other physical activity engaged in was not what WSI would consider to be inconsistent with her claim of disability.

What also creates some doubt is a dissenting opinion by Chief Justice VandeWalle in another § 65-05-33 case, where he stated that the court's application of its "intentional and not inadvertent" definition of "willfulness" had gone beyond what was intended by the definition and that, as a practical matter, the court was now requiring evidence of an intent to mislead or deceive WSI. Hopfauf v. North Dakota Worker's Compensation Bureau, 1998 ND 40, ¶¶ 19-21, 575 N.W.2d 436 (VandeWalle, C.J., dissenting).

### 3. Materiality of the "scienter" certified questions

The question of what must ultimately must be proved in terms of whether S/L Services acted willfully is critical to the determination of whether it has lost its immunity. For example, if "intentionally and not inadvertently" in the context of Vail's misrepresentation-of-payroll claim means that she only has to prove that S/L Services intentionally did not include her wages in the August 2012 - August 2013 wage report and that any lack of knowledge of the law's requirements or a good faith belief that Vail was an employee as a matter of law are irrelevant, then likely there

is nothing more for a factfinder to decide. This is because of evidence that: (1) S/L Services consistently treated Vail as an independent contractor prior to Vail being injured; (2) S/L Services objected to an award of benefits to Vail on the grounds she was not an employee; (3) S/L Services' office manager testified that the reason Vail's wages were not included in the wage report was because it was still attempting to contest WSI's decision that she was an employee; (4) S/L Services did subsequently attempt to contest WSI's decision with the letter written by its accountant claiming Vail was an independent contractor and not an employee; and (5) the wage report in question did not include the wages paid to a handful of other welder's helpers who were similarly situated. Given this, no reasonable factfinder could conclude that the failure to include Vail's wages in the August 2012 - August 2013 wage report was "inadvertent" - at least within the common meaning of the term. See, e.g., Random House Unabridged Dictionary, p. 964 (2d ed. 1993) ("**1.** unintentional: *an inadvertent insult*, **2.** not attentive; heedless, **3.** of, pertaining to, or characterized by lack of attention."); Webster's New World Dictionary, p. 680 (3rd College ed. 1988) ("**1** not attentive or observant; heedless **2** due to oversight; unintentional.")

The certified questions that are posed below attempt to get to what must actually be proved to satisfy the scienter requirement of § 65-04-33(2) in this particular case. However, because the court can only ask questions that can be answered "yes" or "no," a series of questions is required to accomplish that.

        **4.**        **Fourth Certified Question:** *In order to prove a violation of § 65-04-33(2), is Vail required to demonstrate that S/L Services knew at the time it engaged in the conduct that Vail claims amounts to a violation that she or any of the other workers similarly situated were employees as a matter of law and entitled to workers' compensation coverage?*

As noted above, one possible construction of § 65-04-33(2) may be that Vail needs to prove that S/L Services knew that Vail was an employee as matter of law when it committed the acts that Vail contends amount to a violation of § 65-04-33(2) and that nothing less will satisfy the scienter requirement, even evidence that S/L Services acted in reckless disregard of the law's requirements. The fourth question seeks to determine whether that is the case.

5. **Fifth Certified Question:** *In proving a violation of § 65-04-33(2), can Vail satisfy the statute's scienter requirement if she proves that S/L Services acted in reckless disregard of the fact that she and any other workers similarly situated were employees as a matter of law and entitled to worker's compensation coverage at the time it engaged in the prohibited conduct?*

This question is directed to whether Vail can satisfy § 65-04-33(2)'s scienter requirement by proof that S/L Services acted in reckless disregard of the fact that Vail was an employee as a matter of law.

6. **Sixth Certified Question:  In proving a violation of § 65-04-33(2), can Vail satisfy its scienter requirement by proving only that S/L Services intentionally, and not inadvertently, committed an act prohibited by the statute and not prove any other state-of-mind, including that S/L Services had knowledge of the relevant obligations imposed on an employer under the worker's compensation laws, that S/L Services knew that Vail was an employee as a matter of law, that S/L Services intended to deceive WSI or otherwise violate the law, or that S/L Services acted in reckless disregard of  the law's requirements or that Vail  was an employee as a matter of law?**

This question is directed to whether the only scienter requirement is the one that Vail claims applies as discussed above.

7. **Seventh Certified Question:  *Can S/L Services avoid a finding of a violation of § 65-04-33(2) if it can be demonstrated that, at the time it engaged in the conduct that is alleged to have constituted a violation, it believed in good faith that Vail or other similarly situated workers were not employers as a matter of law, even though that belief was mistaken?***

The court asks this question to confirm whether or not it must consider S/L Services' arguments that it acted in a good faith belief that Vail was an employee when ruling on whether there has been a violation of § 65-04-33(2). Aside from what might be required by the statute's scienter requirement, it may be that the North Dakota Supreme Court would conclude that the legislature contemplated a good faith defense.

## V.     CERTIFICATION OF THE QUESTIONS

All of the certified questions easily satisfy the "may be determinative" requirement for certification from federal courts under N.D. R. App. P. 47(a)(1). See Bornsen v. Patrograde, LLC, 2011 ND 183, ¶¶ 6-8, 804 N.W.2d 55 (discussing the standard for certification of questions by a federal district court).

The court is not forwarding the briefing in this case because new briefs addressing the certified questions would be more helpful. Also, the court is not forwarding any of the record evidence because the statement of facts should be sufficient. However, if any of the pleadings, briefs, or other record evidence is desired, the court will forward the information upon request.

Finally, the court invites the North Dakota Supreme Court to reformulate any of the questions as it may deem appropriate in addressing the issues raised by the questions. See Mau v. North Dakota Ins. Reserve Fund, 2000 ND 97, ¶ 15, 610 N.W.2d 761 (the North Dakota Supreme Court making the same offer in certifying a question of law to another state's court).

VI.     **ORDER**

The clerk of court shall transmit to the North Dakota Supreme Court this order and request

for answers to certified questions along with a copy of the court's docket sheet.

**IT IS SO ORDERED.**

Dated this 10th day of January, 2017.

                                        */s/ Charles S. Miller, Jr.*
                                        Charles S. Miller, Jr., Magistrate Judge
                                        United States District Court